**John L. Langslet**, OSB No. 721469
jlangslet@martinbischoff.com
MARTIN BISCHOFF TEMPLETON
  LANGSLET & HOFFMAN LLP
888 SW Fifth Avenue, Ste. 900
Portland, OR 97204
Telephone: (503) 224-3113
Facsimile: (503) 224-9471

   Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **SENECA INSURANCE COMPANY**, a New York corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>**JAMES RIVER INSURANCE COMPANY**, an Ohio corporation,<br><br>  Defendant. | Case No. 3:14-cv-00108-HU<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW**<br><br>**ORAL ARGUMENT REQUESTED** |

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1, counsel for Plaintiff hereby certifies that the parties made a good faith effort through telephone conferences to resolve the dispute and have been unable to do so.

/ / /

Page 1   PLAINTIFF'S MOTION FOR SUMMARY
         JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

## MOTION

Pursuant to Fed. R. Civ. P. 56, Plaintiff Seneca Insurance Company ("Seneca") moves for summary judgment against Defendant James River Insurance Company ("James River") on the grounds that there is no genuine issue as to any material fact and Seneca is entitled to judgment as a matter of law.

This motion is supported by a memorandum of law and the Declaration of John L. Langslet, filed herewith.

## MEMORANDUM OF LAW

### Jurisdiction and Venue

This is a diversity of citizenship action between Plaintiff Seneca, a New York corporation, and Defendant James River, an Ohio corporation. 28 USC § 1332.[1] This case is brought pursuant to the provisions of the federal Declaratory Judgment Act, 28 USC § 2201(a). Plaintiff Seneca also seeks in its contribution claim money damages from James River for its share of incurred defense costs and, therefore, it is appropriate for this court to exercise its jurisdiction. *Snodgrass v. Provident Life*, 147 F 3d 1163, 1167 (9th Cir. 1998).

### Facts

In this declaratory judgment action, Seneca seeks a ruling from the Court that James River has a legal obligation under Oregon law to provide a defense for its insured, Superwall Design, LLP ("Superwall"). Seneca also seeks a money judgment against James River for 50% of the defense costs incurred by Seneca in the defense of its insureds, Superwall and Paul

---

[1] James River's answer admits that it is an Ohio corporation authorized to write surplus lines insurance in Oregon, and that Seneca is a New York corporation authorized to write insurance in Oregon. James River's answer also admits that Seneca and James River are from different states and that Seneca has pleaded an amount in controversy exceeding $75,000.

Page 2   PLAINTIFF'S MOTION FOR SUMMARY
           JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471

Maughan ("Maughan").

Superwall and Maughan have been sued in a construction defect case pending in the Multnomah County Circuit Court, Case No. 1209-11587. A true copy of the Second Amended Complaint ("Complaint") in that case is attached to the Declaration of John L. Langslet, filed herewith.[2] The Plaintiff in the underlying case is S.D. Deacon Corporation of Oregon ("Deacon"), an Oregon corporation.

In the underlying case, Deacon alleges that it was the general contractor for the reconstruction and renovation of various portions of the Sand & Sea condominiums, located in Seaside, Oregon. (Complaint, ¶¶ 1, 7)[3]. The Complaint alleges that Superwall was a licensed Oregon subcontractor and acted as a curtain wall assembly subcontractor at Sand & Sea. (Complaint, ¶ 3). The Complaint alleges that on or about July 8, 2011, after realizing Superwall was unable to sufficiently perform its obligations due to inadequate manpower and financial issues, Deacon hired Defendant Beeline Glass Company of Oregon ("Beeline") to assist Superwall. (Complaint, ¶ 9). The Complaint alleges that thereafter the Sand & Sea Homeowners Association ("the Association") notified Deacon of property damage and construction defect issues relating to the curtain wall renovation at Sand & Sea. (Complaint, ¶ 11). Deacon alleges that it investigated and discovered several construction defects as alleged in subparagraphs 14.a. through 14.y. relating to the sliding glass door assemblies and subparagraphs 14.a. through 14.e. relating to the curtain wall casement windows and sliding glass doors. (Complaint, ¶ 14). The Complaint then alleges in paragraph 15:

---

[2] Paul Maughan was added as a defendant in Deacon's Second Amended Complaint.
[3] A true copy of Deacon's original complaint is also attached to the Declaration of John L. Langslet. The critical allegations of property damage are the same in the original complaint and the second amended complaint. (*See* original complaint, ¶ 12).

Page 3   PLAINTIFF'S MOTION FOR SUMMARY
         JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471

> The conditions described in paragraphs 11-14 above caused significant and ongoing property damage at Sand & Sea, including damage to the structure, damage to the exterior and interior components, and damage to various other components of the Project, as well as loss of use and enjoyment damages. Absent repair, these conditions would have continued to cause significant and ongoing property damage and other damages at Sand & Sea as set forth above.[4]

Paragraph 16 then alleges that the construction defects and property damage were the direct and proximate result of Superwall's and Beeline's faulty workmanship, inadequate or inappropriate application and usage of materials, noncompliance with applicable state and local building codes, violation of relevant manufacturers' specifications and/or installation instructions, violation of relevant industry standards, and Superwall's inadequate instruction and oversight over the work performed by Beeline. (Complaint, ¶ 16). The Complaint alleges that Deacon repaired the construction defects and resulting property damage and has damages of $1.81 million. (Complaint, ¶ 19).

The Complaint then alleges a First Claim against Superwall for breach of contract (Count One), negligence (Count Two), contractual indemnity (Count Three), and, as alternatives to Counts One, Two and Three, common law indemnity (Count Four), and contribution (Count Five).

The Complaint alleges a Second Claim against Maughan, who is a Seneca and James River insured and one of the partners in Superwall. As with paragraph 15 of the Complaint quoted above, paragraph 66 of the claim against Maughan alleges the same elements of property damage. The claims alleged against Maughan in the Complaint are breach of contract (Count

---

[4] This allegation is identical to paragraph 12 in the original Complaint.

Page 4  PLAINTIFF'S MOTION FOR SUMMARY
        JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

One), negligence (Count Two) (where the property damage allegations are found in paragraph 66), contractual indemnity (Count Three), and, as alternatives to Counts One, Two and Three, common law indemnity (Count Four), contribution (Count Five), and negligent misrepresentation (Count Six).

Seneca is defending Superwall and Maughan pursuant to a reservation of its rights. (*See* Declaration of John L. Langslet, ¶¶ 8 and 9).

Seneca provided Commercial General Liability insurance coverage to Superwall from March 22, 2011, to September 26, 2011, with policy limits of $1 million on policy number BAG-1004458. (*See* Declaration of John L. Langslet, Ex. D).

James River provided Superwall and Maughan with Commercial General Liability insurance coverage from September 26, 2011, to January 11, 2012, with policy limits of $1 million on policy number 00050164-0. (*See* Declaration of John L. Langslet, Ex. C).

The James River Commercial General Liability Coverage Form, Section I - Coverages, Coverage A Bodily Injury and Property Damage Liability, paragraph 1, Insuring Agreement, provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> * * *
>
> b. This insurance applies to "bodily injury" and "property damage" only if:

Page 5   PLAINTIFF'S MOTION FOR SUMMARY
         JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471

>    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory,"
>
>    (2) The "bodily injury" or "property damage" occurs during the policy period; and . . . .

The James River CGL form provides in Section V - Definitions, paragraphs 13 and 17:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> * * *
>
> "Property damage" means:
> a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> * * *

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 US 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 US 242, 252 (1986). To overcome a motion for summary judgment, the non-moving party must demonstrate, through the production of probative evidence, that there remains an issue of fact to be tried. *Celotex Corp.,* 477 US at 322-24; *Anderson,* 477 US at 252. The non-moving party may not rely solely on the facts alleged in the pleadings. *Shwarz v. United States,* 234 F3d 428, 436 (9th Cir. 2000). It must come forth with "affidavits or other sources of evidence that set forth specific facts showing that there is a

Page 6   PLAINTIFF'S MOTION FOR SUMMARY
         JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

genuine issue for trial." *Id.* (internal quotations and citations omitted). Only those facts which might affect the outcome of the suit are material facts. *Anderson*, 477 US at 248.

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson,* 212 F3d 528, 531 (9th Cir. 2000) (citations omitted). Fed. R. Civ. P. 56 (e). However, the "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to create a genuine issue of material fact. *Anderson,* 477 US at 252. Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 US 574, 587 (1986).

## ARGUMENT

### Oregon Law

The underlying Complaint alleges that all of the construction defects and resulting property damage occurred to a condominium project in Seaside, Oregon, and Deacon is an Oregon corporation. (Complaint, ¶ 2). Therefore, Oregon law applies. ORS 15.440(3)(a) provides:

> If both the injurious conduct and the resulting injury occurred in the same state, the law of that state governs if either the injured person or the person whose conduct caused the injury was domiciled in that state.

The alleged injurious conduct and the resulting injury occurred in Oregon and the injured person is an Oregon corporation. Therefore, ORS 15.440(3) mandates that Oregon law apply. As to the breach of contract claims in the Deacon Complaint, ORS 15.320 provides that the law of Oregon applies to a "contract for construction work to be performed primarily in Oregon." ORS 15.320(2).

Page 7   PLAINTIFF'S MOTION FOR SUMMARY
         JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471

Under Oregon law, the duty to defend is broader than the duty to indemnify. In Oregon, whether an insurer has a duty to defend an action against its insured depends on two documents: (1) the complaint, and (2) the insurance policy. *Ledford v. Gutoski,* 319 Or 397, 877 P2d 80 (1994). As explained in *Fred Shearer & Sons, Inc. v. Gemini Insurance Co.*, 237 Or App 468, 475, 240 P3d 67, 72 (2010):

> The seminal case regarding the duty to defend under Oregon law is *Ledford v. Gutoski*, 319 Or 397, 877 P2d 80 (1994). In an oft-quoted passage, the court explained:
>
> > Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy. *Oakridge Comm. Ambulance v. U.S. Fidelity,* 278 Or 21, 24, 563 P2d 164 (1977). An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy. *Nielsen v. St. Paul Companies,* 283 Or 277, 280, 583 P2d 545 (1978); *Oakridge Comm. Ambulance v. U.S. Fidelity, supra,* 278 Or at 24; *Ferguson v. Birmingham Fire Ins.,* 254 Or 496, 507, 460 P2d 342 (1969).
>
> > In evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy:
>
> > > If the facts alleged in the complaint against the insured do not fall within the coverage of the policy, the insurer should not have the obligation to defend. If a contrary rule were adopted, requiring the insurer to take note of facts other than those alleged, the insurer frequently would be required to speculate upon whether the facts alleged could be proved. We do not think this is a reasonable interpretation of the bargain to defend. It is more reasonable to assume that the parties bargained for the insurer's participation in the lawsuit only if the action brought by the third party, if successful, would impose liability upon the insurer to indemnify the insured. *Isenhart v. General Casualty Co.,* 233 Or 49, 54, 377 P2d 26 (1962).
>
> > An insurer should be able to determine *from the face of the complaint* whether to accept or reject the tender of the defense of the action. *Ferguson v. Birmingham Fire ins., supra,* 254 Or at

Page 8  PLAINTIFF'S MOTION FOR SUMMARY
        JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

505-506.

*Ledford,* 319 Or at 399-400 (emphasis added).

"In determining the duty to defend, all allegations are assumed to be true." *Valley Forge Ins. Co. v. American Safety Risk Retention Group*, 2006 WL 314455, p. 3 (USDC Or 2006); *Headman v. Liberty Mut. Fire & Ins. Co.*, 158 Or 510, 513, 974 P2d 755 (1999). An insurer has a duty to defend an insured if the complaint has any basis for which the insurer provides coverage. *Nielsen v. St. Paul Co.*, 283 Or 277, 280, 583 P2d 545 (1978). An insurer has a duty to defend an action against its insured if ". . . there is a possibility that the policy provides coverage for the claims made." *Gebrayel v. TransAmerica Title Ins. Co.,* 132 Or App 271, 275, 888 P2d 83 (1995). "If the allegations provide any potential basis on which coverage may arise, the insurer's duty to defend arises." *Valley Forge Ins. Co. v. American Safety Risk Retention Group*, *supra,* p. 3. Oregon courts have also held that an insurer owes a duty to defend an insured even though the complaint contains both covered and uncovered claims because the insurer has an obligation to defend the entire complaint. *Farris v. U.S. Fidelity & Guaranty,* 217 Or 628, 636, 543 P2d 1031 (1975).

### The Complaint and the Policy

The complaint clearly alleges in paragraphs 15 and 66 that the Sand & Sea suffered property damage to property other than the work of Superwall. Those paragraphs allege "damage to the structure, damage to the exterior and interior components, and damage to various other components of the project . . . ." (Complaint, ¶¶ 15 and 66). As quoted above, James River's insurance policy provides coverage for property damage provided that property damage is caused by an occurrence and that property damage occurs during the policy period.

Page 9  PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

There is no question that the complaint alleges that the property damage was caused by an occurrence, which is defined in the James River policy as an accident. This is because paragraph 16 of the complaint alleges that the property damage was the direct result of Superwall's faulty workmanship, plus other allegations of negligent conduct. Under Oregon law, faulty workmanship that results in property damage is an accident. *Willmar Dev., LLC v. Illinois Nat'l Ins. Co.*, 726 F Supp 2d 1280 (Or. 2010); *Kisle v. St. Paul Fire & Marine Co.*, 262 Or 1, 5, 495 P2d 1198 (1972) (citing *Ramco, Inc. v. Pacific Ins.*, 249 Or 666, 669, 439 P2d 1002 (1968)). Under Oregon law, an accident is an incident or occurrence that happened by chance, without design, and contrary to intention and expectation. *St. Paul Fire v. McCormack & Baxter Creosoting*, 324 Or 184, 206, 928 P2d 1200 (1996). There is nothing alleged in the underlying complaint that Superwall or Maughan intended to cause the alleged property damage. In *Mutual of Enumclaw Insurance Company v. Gutman*, 172 Or App 528, 534, 21 P3d 101, rev. denied 333 Or 162 (2001), the court stated that "Damages . . . are caused by an 'occurrence,' unless the insured subjectively intended to cause the *particular injuries* that produced the damages'." There is no such allegation in Deacon's Complaint.

In the context of construction defect litigation, the negligent performance of a contract resulting in the insured furnishing a defective product, or which results in property damage, is damage caused by an accident. *Kisle v. St. Paul Fire & Marine Ins.*, 262 Or 1, 495 P2d 1198 (1972); *Valley Forge Ins. Co. v. American Safety Risk Retention Group*, supra.

In *North Clackamas School Dist. No. 12 v. Oregon School Boards Association Property and Casualty Trust*, 164 Or App 339, 345, 991 P2d 1089 (1999), rev. denied 330 Or 361 (2000), quoting from *Minnis v. Oregon Mutual Insurance Co.*, 162 Or App 198, 210, 986 P2d 77 (1999),

Page 10   PLAINTIFF'S MOTION FOR SUMMARY
         JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471

the court stated:

> . . . [i]n the insurance context, the meaning and determination of "accident" focuses not on conduct, but on result:
>
>> "[T]he question is not whether the conduct that caused the injury was intentional but whether the insured specifically intended to cause the injury that gives rise to coverage. . . ."

The analysis in the Ninth Circuit's opinion in *MW Builders, Inc. v. Safeco Ins. Co. of America*, 267 Fed Appx 552, 554-55 (9th Cir. 2008), is particularly helpful and on point:

> We begin with Safeco's challenge to MW Builders' claim that it is entitled to coverage under Safeco's commercial general liability ("CGL") policies. The CGL policies limit coverage to "property damage" caused by an "occurrence." For a claim of faulty workmanship to give rise to "property damage," a claimant must demonstrate that there is damage to property separate from the defective property itself. *Oak Crest Constr. Co. v. Austin Mut. Ins. Co.*, 329 Or. 620, 998 P.2d 1254, 1258 (2000). The CGL policies define the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Although the policies do not define the term "accident," the Oregon Supreme Court has stated that an "accident" is an act "that happened by chance, without design and contrary to intention or expectation." *St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 923 P.2d 1200, 1213 (1996) (internal quotation marks omitted). We find that the damages that occurred to the Candlewood Suites Hotel ("Hotel") as a result of the faulty installation of an exterior insulation and finishing system ("EIFS") by Portland Plastering--rather than any damages associated with the actual replacement of the EIFS--satisfy these criteria. Therefore, we affirm the district court's decision that MW Buildings' claim is covered under the CGL policies.

Applying this analysis in the instant case, it is clear that Deacon's claims against Superwall and Maughan are covered under the CGL policy of James River.

The other requirement in the James River insurance policy is that the property damage

Page 11   PLAINTIFF'S MOTION FOR SUMMARY
           JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471

occurs during the policy period. There are no dates alleged in the complaint as to when the property damage occurred. The only dates alleged in the complaint are the date that the Association entered into a contract with Deacon which is alleged to be on or about February 2011. (Complaint, ¶ 7). The only other date in the complaint is that on or about July 8, 2011, after realizing Superwall was unable to sufficiently perform its obligations under the contract, Deacon entered into a subcontract with Beeline to supplement Superwall's labor needs. (Complaint, ¶ 9). Therefore, Deacon could recover under its complaint for property damage that occurred while the James River policy was in effect from September 26, 2011, to January 11, 2012. (*See* Declaration of John L. Langslet). *Bresee Homes, Inc. v. Farmers Ins. Exchange*, 353 Or 112, 293 P3d 1036 (2012). In *Bresee Homes*, a construction defect case, the court held that because the complaint did not allege the date that the contractor completed its work, then the damage could have occurred at any time after contract execution and, therefore, the completed operations hazard exclusion could not apply to defeat the insurer's duty of defense. The holding of *Bresee Homes* means that this Court should conclude that, because no dates of damage are alleged, the alleged property damage could have occurred while the James River policy was in effect and thus James River must defend.

*Valley Forge Ins. Co. v. American Safety Risk Retention Group*, *supra*, was a construction defect case. As in the instant case, the defendant insurer's policy provided that it covered property damage only if it occurred during the policy period. The defendant insurer argued that the condominiums were constructed from 1995 to 1997, and therefore the property damage must have occurred prior to defendant's policy period which began on April 18, 2000. Magistrate Judge Hubel disagreed and wrote:

Page 12   PLAINTIFF'S MOTION FOR SUMMARY
         JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

> I reject defendant's argument. The Vista House Amended
> Complaint contends that in February 2001, the plaintiffs in the
> Vista House action hired an independent consultant to inspect
> Vista House and began discovering deficiencies in the construction
> of the three buildings. Exh. A to Baird Affid. at ¶ 9. It is
> reasonable to infer that some property damage prompted the hiring
> of a consultant and thus, occurred before February 2001. But, the
> allegations are ambiguous about exactly when the property damage
> became apparent and thus, it is possible, and not unreasonable, to
> assume that at least some property damage did not occur until
> sometime after April 18, 2000, or that other property damage did
> not occur until between February 2001 and April 18, 2001.

Similarly, in the instant case, it is possible, and certainly not unreasonable, to assume that property damage occurred after the inception date of James River's insurance policy on September 26, 2011. Thus, James River has a duty of defense.

There are exclusions in the James River policy for damage to the work or work product of Superwall. (*See* Declaration of John L. Langslet, Ex. C, James River CGL Form Exclusion k, l, m). However, those exclusions have no effect on the analysis of James River's duty to defend because the complaint clearly alleges damage to property other than the work or work product of Superwall. *State Farm Fire and Casualty Co. v. American Family Mutual Insurance*, 242 Or App 60, 253 P3d 65 (2011). Even in the case where a complaint's allegations are ambiguous as to whether damage occurred to other parts of a house, an insurer must defend. *Fred Shearer & Sons, Inc. v. Gemini Insurance Co.*, *supra*. However, the allegations in Deacon's complaint are clear that there is alleged damage to other parts of the condominium other than the work product of Superwall. As explained in *Spring Vegetable Co. v. Hartford Cas. Ins. Co.*, 801 F Supp 385, 392:

> . . . The injury to product exclusions are "intended to exclude
> insurance for damage to the insured's product or work, but not for
> damage caused by the insured's products or work." Long, *Law of*

Page 13   PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471

>*Liability Insurance*, § 11.09[2], pp. 11--85-86 (1991).  This rule is
>consistent with the general goal of comprehensive general liability
>insurance, "which is to protect the insured from the claims of
>injury or damage to others, but not to insure against economic loss
>sustained by the insured due to repairing or replacing its own
>defective work or products."  Id. at pp. 11--90-91.

The Deacon Complaint alleges damage to others beyond the economic loss to Superwall and Maughan of repairing or replacing their defective work or products.

### Attorney Fees

Seneca seeks a judgment against James River for 50% of the defense costs incurred by Seneca in connection with the defense of Superwall and Maughan in the Deacon lawsuit.  The policy limits of both Seneca and James River are $1 million per occurrence.  Under Oregon law, multiple defending insurers are to pro-rate the defense costs based on their insurance policy limits.  *Lamb-Weston v. Oregon Auto Insurance Co.*, 219 Or 110, 131-138, 341 P2d 210, 346 P2d 643 (1959).  Therefore, it is Seneca's position that James River and Seneca should each pay 50% of the defense costs.

However, Seneca does not seek a judgment for attorney fees at this time.  Rather, both Seneca's and James River's counsel agree that it should be more efficient for the court if the question of the amount of attorney fees be postponed until the court decides the key underlying issue in the case:  whether James River has a duty of defense.  If the court answers that question in the affirmative, then Seneca will submit detailed billings for the defense costs incurred to date with a request for the entry of a judgment, and then, of course, James River will have an opportunity to respond.

### CONCLUSION

All of the requirements of the James River policy are met.  There are allegations in the

Page 14   PLAINTIFF'S MOTION FOR SUMMARY
           JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471

Complaint of damage to property other than the work or work product of Superwall, and that damage was allegedly caused by an occurrence or an accident, and this property damage may have occurred during the James River policy period. Therefore, it is respectfully asserted that this Court should rule that James River must defend with Seneca both of their insureds, Superwall and Maughan, in the underlying case.

DATED: April 9, 2014.

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP

By: s/John L. Langslet
John L. Langslet, OSB No. 721469
jlangslet@martinbischoff.com
888 SW Fifth Avenue, Ste. 900
Portland, OR 97204
Telephone: (503) 224-3113
Facsimile: (503) 224-9471

Of Attorneys for Plaintiff

Page 15   PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471