**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| SENECA INSURANCE COMPANY, a New York corporation, | ) ) ) |
| Plaintiff, | ) **No. 03:14-cv-00108-HU** ) |
| vs. | ) ) |
| JAMES RIVER INSURANCE COMPANY, an Ohio corporation, | ) **OPINION AND ORDER ON** ) **MOTION FOR SUMMARY JUDGMENT** ) |
| Defendant. | ) |

John Loring Langslet
Martin Bischoff Templeton Langslet & Hoffman
888 SW Fifth Avenue, Suite 900
Portland, OR 97204

    Attorney for Plaintiff

Elizabeth E. Lampson
davis Rothwell Earle & Xochihua, PC
111 SW 5th Avenue, Suite 2700
Portland, OR 97204

    Attorney for Defendant

HUBEL, Magistrate Judge:

    The plaintiff Seneca Insurance Company ("Seneca") brings this action against the defendant James River Insurance Company ("James River"), seeking a declaratory judgment that James River has a duty to defend its insured Superwall Design, LLP ("Superwall"), in an action pending in the Multnomah County

1 - OPINION AND ORDER

Circuit Court entitled *S.D. Deacon Corp. of Oregon v. Superwall Design, LLP*, Case No. 1209-11587 (the "underlying action"). Seneca also seeks a money judgment for 50% of its defense costs in defending Superwall and one of its principals, Paul Maughan, in the underlying action.

The case is before the court on Seneca's motion for summary judgment, Dkt. #10. The motion is fully briefed, and the court heard oral argument on the motion on July 17, 2014. The parties have consented to jurisdiction and the entry of final judgment by a United States Magistrate Judge, in accordance with Federal Rule of Civil Procedure 73(b). Accordingly, the court turns to consideration of the motion.

Notably, as James River pointed out during oral argument, Seneca's Complaint only makes a claim for relief regarding James River's duty to defend Superwall; the Complaint asks nothing with regard to Maughan. The court denied Seneca's oral motion to amend its Complaint to include a claim for Maughan's defense, without prejudice to the filing of a formal motion to amend, should Seneca so desire. Similarly, the court's ruling on the current motion for summary judgment applies only to James River's duty to defend Superwall, not Maughan.

### *I. SUMMARY JUDGMENT STANDARDS*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the court "must not weigh the evidence or determine the truth of

2 - OPINION AND ORDER

the matter but only determine whether there is a genuine issue for trial." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002) (citing *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996)).

The Ninth Circuit Court of Appeals has described "the shifting burden of proof governing motions for summary judgment" as follows:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S. Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 528 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S. Ct. 2505.

*In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010).

3 - OPINION AND ORDER

## *II.   CHOICE OF LAW*

Both Seneca and James River are foreign corporations authorized to write insurance in Oregon. It is undisputed that both Superwall's conduct, and the resulting injury alleged in the underlying action, occurred in Oregon. Therefore, Oregon law controls the resolution of the parties' dispute. *See* ORS § 15.440(3)(a).

## *III.   BACKGROUND FACTS*

The underlying action alleges construction defects in the Sand & Sea Condominiums, a 60-unit complex located in Seaside, Oregon. In its original Complaint in the underlying action, S.D. Deacon Corp. ("Deacon") alleged that in February 2011, it entered into a contract with the Sand & Sea unit owners association (the "Association") "for the reconstruction and renovation of various portions of Sand & Sea, including to the curtain wall assemblies at the Project[.]" Dkt. #11-1, ¶ 5. Deacon subcontracted with Superwall "for work on the Curtain Wall Renovation. . . ." *Id.*, ¶ 6.

At some point *not specified in the Complaint*, the Association "notified Deacon of property damage and construction defect issues allegedly arising out of, or relating to, the Curtain Wall Renovation at Sand & Sea." *Id.*, ¶ 8. Deacon investigated the Association's allegations, a process in which Deacon claims Superwall declined to participate. *Id.*, ¶¶ 9 & 10. As a result of its investigations, Deacon concluded the alleged property damage was "the result of . . . construction defects, inadequate or inappropriate usage of materials,

4 - OPINION AND ORDER

violations of the applicable state and local building codes, and violations of the relevant industry standards, arising from, or relating to, the work performed by Superwall as part of the Curtain Wall Renovation." *Id.*, ¶ 11 (listing over 50 alleged problems resulting from Superwall's work).

Deacon claimed these conditions "caused significant and ongoing property damage at Sand & Sea, including damage to the structure, damage to the exterior and interior components, and damage to various other components of the Project, as well as loss of use and enjoyment damages." *Id.*, ¶ 12. Further, Deacon alleged all of the listed "defects, deficiencies, and property damage" were directly and proximately caused by "Superwall's faulty workmanship; inadequate or inappropriate application and usage of materials; noncompliance with applicable state and local building codes; violation of relevant manufacturers' specifications and/or installation instructions; and, violation of relevant industry standards." *Id.*, ¶ 13.

Deacon claimed it incurred costs exceeding $1.78 million to effect repairs to Sand & Sea. It further claimed Superwall declined to participate in any of the repairs. *Id.*, ¶¶ 14 & 15.

It appears Deacon put Superwall on notice of the construction defect claims in a letter dated January 24, 2012. *See* Dkt. #11-5, p. 1 (referencing the letter). On June 18, 2012, in a letter to James River and Travelers Casualty Insurance Company of America ("Travelers"), Deacon tendered its claim "as additional insured on Superwall's policy of insurance" issued by James River and Travelers. *Id.* Deacon filed the underlying action against Superwall, and provided James River

5 - OPINION AND ORDER

with a copy of the Complaint via e-mail on October 25, 2012. *See* Dkt. #11-6. According to James River, the e-mail was its first notice that the underlying action had been filed. *Id.*

Deacon amended its Complaint in the underlying action twice; its First Amended Complaint is not part of the record before this court. In its Second Amended Complaint, Deacon added as a defendant one of Superwall's principals, Paul Maughan. Deacon alleged Maughan's under-funding of Superwall caused Superwall financial problems that "materially affected the outcome of the Project as Superwall was incapable of paying the wages of [its] employees and/or laborers and the material suppliers for the Project." Dkt. #11-2, ¶ 5. Deacon also added as a defendant Beeline Glass Company of Oregon ("Beeline"), which Deacon hired "[o]n or about July 8, 2011, . . . to supplement and assist Superwall's labor needs. . . ." *Id.*, ¶ 9; *see id.*, ¶ 4.

Superwall filed third-party claims against the project's architect, the Association's property manager, Beeline, and numerous subcontractors and materials suppliers. *See* Dkt. #16-1. In its pleading, Superwall alleged that after it was notified by Deacon of leaks in the curtain wall system, "Deacon and Superwall both performed extensive investigations to find the causes of the leaking." *Id.*, ¶ 10. Superwall claims the alleged deficiencies in its work, and the property damage allegedly resulting therefrom, resulted from the architect's improper design, oversight, and administration of the project, and defects in the work and/or materials supplied by the other third-party defendants. *Id.* On the issue of when Superwall performed work on the Project, Superwall alleged it was

6 - OPINION AND ORDER

subcontractor on the Project "[i]n 2011," *id.*, ¶ 1; and it "performed work on the Project in the summer of 2011," *id.*, ¶ 9. Superwall alleged remedial work was performed on the Project in the fall of 2011, *id.*, ¶¶ 2 & 3; "late 2011," *id.*, ¶ 10; in 2012, *id.*, ¶ 5; and "between March and June 2012," *id.*, ¶ 12. *See id.*, ¶¶ 15, 20. Superwall amended its Third-Party Complaint twice, but did not clarify its allegations regarding when its work was performed or when any damage allegedly occurred. *See* Dkt. ##16-2 & 16-3.

On October 11, 2013, Deacon, through its attorney, issued a supplemental tender of defense and indemnity to James River. Dkt. #18, ECF p. 3. In the letter, Deacon indicated James River had insured Superwall from September 16, 2011, to January 11, 2012, under policy number 00050164-0. *Id.*, ECF p. 4. Deacon requested "a formal coverage decision" from James River. *Id.* In response, on December 5, 2013, James River issued a denial of coverage, "[b]ased on the allegations [in the underlying action] and policy terms," with no accompanying explanation. *Id.*, ECF p. 9. Seneca filed the present action on January 21, 2014.

### *IV. RELEVANT POLICY PROVISIONS*

James River insured Superwall under commercial general liability policy No. 00050164-0 (the "Policy"), evidencing a policy period of September 26, 2011, to September 26, 2012. Dkt. #11-3, ECF p. 1. The policy was canceled effective January 11, 2012. *Id.*, ECF p. 63.

In their summary judgment papers, the parties identify several policy provisions as relevant to Seneca's motion for

7 - OPINION AND ORDER

summary judgment. The court has quoted, below, all of the policy provisions identified by the parties in the order in which those provisions appear in the Policy. (All emphases shown below are in the policy itself.)

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

      * * *

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" oc-curred, then any continuation, change or resumption of such

8 - OPINION AND ORDER

                   "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

      **c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

      **d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

            *   *   *

           **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

           **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    *   *   *

Dkt. #11-3, ECF p. 4.

    **2.**    **Exclusions**

    This insurance does not apply to:

    *   *   *

    **j.**    **Damage To Property**

    "Property damage" to:

    *   *   *

9 - OPINION AND ORDER

        **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

        **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

   \*    \*    \*

    Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

   \*    \*    \*

**l.**   **Damage To Your Work**

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*Id.*, ECF pp. 7-8.

**SECTION V - DEFINITIONS**

   \*    \*    \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

   \*    \*    \*

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to

10 - OPINION AND ORDER

         occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   *   *   *

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

*Id.*, ECF pp. 17-19.

**CLAIM(S) IN PROGRESS EXCLUSION**

    a. This policy does not apply to "bodily injury", "personal and advertising injury" or "property damage" which begins or takes place before the inception date of coverage, whether such "bodily injury", "personal and advertising injury" or "property damage" is known to an insured, even though the nature and extent of such damage or injury may change and even though the damage may be continuous, progressive, cumulative, changing or evolving, and even though the "occurrence" causing such "bodily injury",

11 - OPINION AND ORDER

> "personal and advertising injury" or "property damage" may be or may involve a continuous or repeated exposure to substantially the same general harm.
>
> b. All "property damage" to units of or within a single project or development, and arising from the same general type of harm, shall be deemed to occur at the time of damage to the first such unit, even though the existence, nature and extent of such damage or injury may change and even though the "occurrence" causing such "property damage" may be or involve a continuous or repeated exposure to substantially the same general harm which also continues or takes place (in the case of repeated exposure to substantially the same general harm) during the policy term.

*Id.*, ECF pp. 46-47.

### *V. DISCUSSION*

### *A. Duty to Defend*

"The seminal case regarding the duty to defend under Oregon law is *Ledford v. Gutoski*, 319 Or. 397, 877 P.2d 80 (1994)." *Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or. App. 468, 475, 240 P.3d 67, 72 (2010). In *Ledford*, the Oregon Supreme Court explained the general standards for determining whether an insurer has a duty to defend its insured against a particular claim. The *Ledford* court held the insurer's duty to defend "depends on two documents: the complaint and the insurance policy," with the duty to defend arising when "the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy." *Ledford*,

12 - OPINION AND ORDER

319 Or. at 399-400, 877 P.2d at 82 (citations omitted). In making this analysis, "the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy[.]" *Ledford*, 319 Or. at 400, 877 P.2d at 82 (citations omitted). The face of the complaint, itself, should allow the insurer to determine whether it has a duty to defend the insured. *Id.* (citing *Ferguson v. Birmingham Fire Ins.*, 254 Or. 496, 505-06, 460 P.2d 342, 346 (1969)).

The duty to defend arises "if the complaint provides *any basis* for which the insurer provides coverage." *Ledford*, 319 Or. at 400, 877 P.2d at 83 (emphasis in original; citation omitted). This is true even if some of the conduct alleged in the complaint falls outside the policy's coverage, with any ambiguity as to coverage being "resolved in favor of the insured." *Id.* The "analysis focuses on the *allegations* in the complaint[] rather than the claims identified in it." *Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Starplex Corp.*, 220 Or. App. 560, 584, 188 P.3d 332, 346-47 (2008) (emphasis in original; internal quotation marks, citation omitted); *accord Anderson Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, 729 F.3d 923, 936 (9th Cir. 2013) (quoting *Starplex*).

The Oregon Supreme Court has rejected the notion that a complaint must allege the specific time when a covered event occurred. In *Bresee Homes, Inc. v. Farmers Insurance Exchange*, 353 Or. 112, 293 P.3d 1036 (2012), the court found it "noteworthy" that the insurer *could not determine* from a reading of the complaint whether or not the alleged damage occurred

during the policy period. *Bresee*, 353 Or. at 122, 293 P.3d at 1042. The court noted that at the time the claim was tendered for defense, the issue of when the claimed damage actually occurred was one that would be determined in the litigation, and its resolution could affect the insurer's duty to *indemnify*, but the duty to defend was based solely on the language of the complaint and the policy. *Bresee*, 353 Or. at 123-24, 293 P.3d at 1042. The court held, "Our analysis of the duty to defend focuses on those allegations [in the complaint,] whether or not different or additional facts might be adduced at trial." *Bresee*, 353 Or. at 123, 293 P.3d at 1042.

In the present case, the quoted provisions indicate the Policy will pay for "property damage" that (1) is caused by an "occurrence"; (2) occurs during the policy period; and (3) was unknown to the insured prior to the policy period. The Policy excludes, among other things, property damage resulting from the insured's work "incorrectly performed," except work performed by a subcontractor; and property damage which begins prior to the inception date of the Policy, even though such damage may be "continuous, progressive, cumulative, changing or evolving," whether or not the damage is known to the insured.

Seneca argues that under *Ledford* and its progeny, James River clearly has a duty to defend Superwall in the underlying action. Deacon's Complaint alleges property damage to Sand & Sea caused by an occurrence. Both the original Complaint and the Amended Complaint are silent with regard to *when* the alleged damage occurred, and when Superwall knew of the alleged damage. Thus, Seneca argues, Deacon's claim against Superwall *as stated*

14 - OPINION AND ORDER

*in the Complaint* could impose liability for conduct covered by the Policy. Dkt. #10.

James River argues Deacon's pleadings contain allegations from which James River could conclude the alleged damage occurred before the Policy's effective date of September 26, 2011, excluding such damage from coverage under the Policy. James River relies on Deacon's allegation that it had to hire Beeline to supplement and assist Superwall's work in July 2011. Thus, James River reasons, the fact that Superwall performed work on the Project in the summer of 2011, coupled with Deacon's allegations that Superwall's work was defective, clearly demonstrates the alleged damage occurred, or began to occur, prior to the Policy's effective date.

James River further argues it is undisputed that "rain fell" and "air moved" in Seaside, Oregon, "at some point between the summer of 2011 and the inception of [the Policy] in late September." Dkt. #15, ECF p. 3. Thus, according to James River, "[t]he laws of nature dictate that at least some alleged damage in the form of air and water intrusion occurred before the effective date of [the Policy]." *Id.* Whether or true or not, these "undisputed" facts are not alleged in the Complaint and do not appear in the Policy. Whether or not the weather conditions might be helpful in considering a duty-to-indemnify question, they are useless when considering the duty to defend.

James River also argues Superwall's allegations in it third-party pleadings constitute a "judicial admission" that James River owes no duty to defend. James River argues that Superwall's "affirmative allegations . . . that it performed

15 - OPINION AND ORDER

work in the summer of 2011 and that remedial work was performed in the fall of that year" establish that the damage would have had to occur prior to inception of the James River policy. *Id.*, ECF pp. 7-8.

The court finds James River's arguments are inconsistent with Oregon law, and often are looking through the wrong end of the telescope. The fact that Superwall performed work on the Project in the summer of 2011 does not mean its work was finished prior to inception of the Policy. Nor does the fact that "rain fell" and "air moved" between the time Superwall began work on the Project and the Policy's issuance reasonably lead to a conclusion that "at least some alleged damage" occurred prior to the Policy's issuance. (Further, as noted above, the Complaint contains no factual allegations regarding the weather.) Similarly, an allegation that remedial work was performed in the fall of 2011 does not establish *when* in the fall the remedial work was performed. In the Northern Hemisphere, fall, or autumn, generally is defined as extending from the autumnal equinox, occurring on September 22nd or 23rd, and the winter solstice, occurring on December 21st or 22nd. *See, e.g.*, *Encyclopaedia Britannica Online Academic Edition*, "Autumn," http://www.britannica.com/EBchecked/topic/45215/autumn (Jul. 2, 2014). Thus, all but three or four days of the fall season occurred *after* the inception of the Policy.

James River's attempt to rely on Superwall's third-party pleadings is misplaced, for two reasons. First, the court looks only at the language of the applicable policy and the Complaint

16 - OPINION AND ORDER

that raises the claim; the allegations of third-party pleadings are irrelevant as to the insurer's original duty to defend. Put another way, it is the Complaint, if anything, against which James River must defend, not the third-party complaint. Second, Superwall's third-party pleadings do not provide any further clarification regarding when Superwall's work was performed, or when damage allegedly occurred.

Although the evidence at trial may show that, indeed, damage occurred, or began to occur, prior to the Policy's inception, thereby eliminating James River's duty to *indemnify* Superwall, nothing in Deacon's or Superwall's pleadings requires such a conclusion. James River could not eliminate the possibility that the alleged damage occurred during the policy period based on the allegations of the Complaint. *See Bresee*, 353 Or. at 122, 293 P.3d at 1042. Accordingly, the court finds James River's duty to defend was triggered by the allegations in Deacon's original Complaint, and the duty was not extinguished by any allegation in Deacon's amended pleadings. Seneca's motion for summary judgment on James River's duty to defend is **granted**.

### B. Participation in Defense Costs

The Oregon Supreme Court has long held that "the loss as between insurers should be 'prorated in the ratio which the limits of the policies bear to the total coverage.'" *Certain Underwriters at Lloyd's London & Excess Ins. Co., Ltd. v. Mass. Bonding & Ins. Co.*, 235 Or. App. 99, 112, 230 P.3d 103, 112 (2010) (quoting *Lamb-Weston, Inc. v. Or. Auto Ins. Co.*, 219 Or.

17 - OPINION AND ORDER

130, 137, 341 P.2d 643, 647 (1959)). Seneca argues that because the policy limits of its own policy and the James River policy are $1 million per occurrence, therefore, Seneca and James River each should be responsible for 50% of the defense costs in the underlying action.

However, the parties have agreed that the court should not decide the issue of the amount of defense costs at this juncture, reserving that decision until Seneca has filed a detailed motion and exhibits to which James River then may respond. The court agrees, and reserves ruling on the issue. Further, it makes sense, in terms of judicial economy, for the court to take up the matter of damages after ruling on any motion Seneca files to amend its Complaint to add a claim for Maughan's defense, and any motion for summary judgment with regard to Maughan's defense.

### *VI. CONCLUSION*

Seneca's motion for summary judgment (Dkt. #10) is **granted in part and reserved in part**. The court finds James River has a duty to defend Superwall, and the duty commenced upon the filing of the underlying action.

The court reserves ruling on the amount of Seneca's damages until Seneca files its detailed motion for defense costs.

IT IS SO ORDERED.

Dated this 16th day of July, 2014.

/s/ Dennis J. Hubel

18 - OPINION AND ORDER

```
                        Dennis James Hubel
                        Unites States Magistrate Judge
```

19 - OPINION AND ORDER